UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHY HARRIS<br><br>    Plaintiff,<br><br>v.<br><br>CLICKSPARK, LLC d/b/a<br>DEGREEMATCH<br><br>    Defendant. | CIVIL ACTION<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES the Plaintiff, KATHY HARRIS ("Plaintiff"), by and through her attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendant, CLICKSPARK, LLC d/b/a DegreeMatch ("DegreeMatch" or "ClickSpark, LLC d/b/a DegreeMatch"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking damages for DegreeMatch's violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227, DegreeMatch's violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") pursuant to 815 ILCS 505/1, and DegreeMatch 's violations of the Illinois Automatic Telephone Dialers Act ("ATDA") pursuant to 815 ILCS 305/30.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by 47 U.S.C. §227 ("TCPA"), and 28 U.S.C. §§1331 and 1337 because the action arises under the laws of the United States and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. § 1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant conducts business in this District.

## PARTIES

4. Plaintiff is a consumer and natural person over 18-years-of-age, who at all times relevant, resided in the State of Indiana.

5. Defendant ClickSpark, LLC d/b/a DegreeMatch is a company that helps consumers find education providers.[1] ClickSpark, LLC d/b/a DegreeMatch is a limited liability company headquartered in Rochester, NY. Its principal place of business is located at 530 Summit point, Henrietta, New York, 14467.

## DEGREEMATCH 'S CALLS TO PLAINTIFF'S CELLULAR PHONE

6. At all times relevant, Plaintiff was the sole subscriber, owner, and operator of a cellular telephone with an assigned number ending in 9534. Plaintiff is and has always been financially responsible for her cellular phone and its services.

7. On or around the beginning of January, 2016, Plaintiff began receiving unknown calls to her cellular phone.

8. Plaintiff did not immediately pick up these calls because Plaintiff did not recognize the phone number.

9. After the first few calls, and within the first week of January 2016, Plaintiff answered one of these calls in order to determine who it was that kept calling.

10. In this particular call, Plaintiff noticed an approximate 3-second pause between the time she said "hello," and the time that a live agent introduced them self as a representative from Degreematch.

---

[1] http://www.degreematch.com

11. In this same call, after the live agent came on the line, the representative began to explain that Degreematch would be able to provide information to Plaintiff about different nursing schools in the area, provide her with financial resources to obtain a loan, and otherwise assist her in obtaining a nursing degree.

12. In this same call, after Plaintiff listened to DegreeMatch's sales pitch, Plaintiff told the DegreeMatch representative that she was not interested Degreematch's services and that she is already enrolled in a nursing school. Plaintiff further asked DegreeMatch to please stop calling and to place her on the "do not call" list.

13. Plaintiff has never previously contacted DegreeMatch nor has Plaintiff ever had any type of a business relationship with DegreeMatch.

14. After this first conversation with DegreeMatch, DegreeMatch continued to make numerous calls to Plaintiff throughout the month of January which Plaintiff ignored or otherwise allowed to go to voicemail.

15. Bewildered by the number of calls from DegreeMatch, Plaintiff answered another call in or around the beginning of February, 2016.

16. In this particular call, after Plaintiff answered, a pre-recorded message played which requested Plaintiff to remain on the line while a representative was being located.

17. In this same call, Plaintiff, again, noticed an approximate 3-second pause between the time the pre-recorded message ended and the time that a live agent introduced them self as a representative from DegreeMatch.

18. After the DegreeMatch representative came on the line, Plaintiff explained to DegreeMatch that she had previously requested that DegreeMatch place her on the "do not call list" and, again, asked DegreeMatch to stop calling her.

19. Although Plaintiff asked DegreeMatch to stop calling her on, at least two separate occasions, DegreeMatch continued its barrage of harassing calls to Plaintiff's cellular phone.

20. Plaintiff became increasingly frustrated and aggravated, and, thus, temporarily stopped answering the continued calls from DegreeMatch.

21. Plaintiff, in or around the beginning of March, 2016, answered another call from DegreeMatch.

22. In this call, Plaintiff demanded that DegreeMatch stop calling and harassing her.

23. However DegreeMatch did not stop calling. Instead DegreeMatch continued its campaign of harassing phone calls through March, 2016.

24. Plaintiff has unequivocally revoked consent to be called on, at least, three separate occasions, however DegreeMatch continues with its relentless cellular phone calls.

25. In addition, DegreeMatch has left several pre-recorded voicemail messages on Plaintiff's cellular phone in its continued attempts to sell Plaintiff its services.

26. From January, 2016 through March, 2016, DegreeMatch has placed no less than 180 phone calls to Plaintiff's cellular phone.

27. The pervasiveness of DegreeMatch's phone calls disrupted Plaintiff's everyday life and general well-being.

28. As a result, Plaintiff was forced to expend time and energy to retain counsel as a result of DegreeMatch's conduct.

29. DegreeMatch's campaign of harassing phone calls was highly confusing and upsetting and has caused Plaintiff actual harm, including but not limited to, invasion of privacy, the aggravation that accompanies unsolicited telephone calls, emotional distress, increased usage of

her cellular phone services, reduced phone battery life, and has further diminished space for data storage on her cellular phone.

### COUNT I – VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

30. Plaintiff restates and realleges paragraphs 1 through 29 as though fully set forth herein.

31. The TCPA prohibits calling persons on their cell phone using an automatic telephone dialing system ("ATDS") without their consent. 47 U.S.C. §227(b)(1)(iii). The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

32. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

33. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

34. Based on the pause and lack of prompt human response during the phone calls in which Plaintiff answered, DegreeMatch used a predictive dialing system to place calls to Plaintiff.

35. Plaintiff repeatedly revoked consent and such revocation was unequivocal because Plaintiff asked DegreeMatch to please stop calling her on at least 3 separate occasions.

36. DegreeMatch violated the TCPA by placing no less than 180 calls to Plaintiff's cellular phone using an ATDS without her consent.

37. As pled in paragraphs 28 and 29, Plaintiff was harmed by DegreeMatch's collection calls to her cellular phone.

38. Pursuant to 47 U.S.C. §227(b)(3)(B), DegreeMatch is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), DegreeMatch's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff KATHY HARRIS requests that this Honorable Court:

a. Declare DegreeMatch's phone calls to Plaintiff to be a violation of the TCPA;
b. Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C);
c. Award Plaintiff reasonable attorney fees and costs; and
d. Award any other relief this Honorable Court deems equitable and just.

## COUNT II – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

39. Plaintiff restates and reallages paragraphs 1 through 29 as through fully set forth herein.

40. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.

41. Plaintiff is a "person" as defined in ICFA, 815 ILCS 505/1 (c).

42. Plaintiff is a "consumer" as defined in ICFA, 815 ILCS 505/1 (e).

43. DegreeMatch is engaged in "commerce" in the State of Illinois with regard to Plaintiff as defined by ICFA, 815 ILCS 505/1(f). DegreeMatch specializes in providing individuals with loans for education and matching individuals with educational programs, an activity which is within the stream of commerce and utilized in DegreeMatch's regular course of business. *See* http://www.degreematch.com.

### a. Unfairness

44. It was unfair for DegreeMatch to harass Plaintiff through numerous cellular phone calls placed to Plaintiff's cellular phone after Plaintiff requested that the calls cease.

45. It was unfair for DegreeMatch to continuously call Plaintiff and attempt to induce Plaintiff into using DegreeMatch's services through a barrage of cellular phone calls and over-the-phone advertisement after Plaintiff requested that the phone calls stop.

46. The phone harassment campaign DegreeMatch has imposed onto Plaintiff is unfair, oppressive, against public policy, immoral, and unethical.

47. As pled in paragraphs 28 and 29, Plaintiff was harmed by DegreeMatch 's unfair conduct.

48. Upon information and belief, DegreeMatch systematically place unsolicited phone calls to consumers in Illinois in order to induce consumers to use their services.

49. Placing harassing phone calls to consumers is an unfair business practice willfully employed by DegreeMatch and, upon information and belief, is done on a broad scale.

### b. Deception

50. DegreeMatch 's repetitive phone calls represents the use of deception in an attempt to induce Plaintiff into retaining their services. *See* 815 ILCS 505/2.

51. DegreeMatch's campaign of harassing phone calls were systematically calculated to induce and deceive Plaintiff into purchasing DegreeMatch's services through systematic repetition.

52. Such deceptive conduct is harmful to Illinois consumers as it can result in Illinois consumers feeling like they have no other choice but to be subjugated to harassing phone calls.

53. As pled in paragraphs 28 and 29, Plaintiff has suffered damages as a result of DegreeMatch 's unlawful collection practices.

54. An award of punitive damages is appropriate because DegreeMatch's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of the Plaintiff and consumers, generally, and Plaintiff had no choice but to submit to the continued harassing phone calls.

WHEREFORE, Plaintiff KATHY HARRIS requests that this Honorable Court:

a. Enter judgment in her favor and against DegreeMatch:
b. Award Plaintiff her actual damages in an amount to be determined at trial;
c. Award Plaintiff punitive damages in an amount to be determined at trial;
d. Award Plaintiff her reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and
e. Award any other relief this Honorable Court deems equitable and just.

### COUNT III – VIOLATIONS OF THE ILLINOIS AUTOMATIC TELEPHONE DIALERS ACT

55. Plaintiff restates and reallages paragraphs 1 through 29 as through fully set forth herein.

56. Under the Illinois Automatic Telephone Dialers Act ("ATDA") it is unlawful to use an autodialer:

      a. To dial numbers determined by successively increasing or decreasing integers. *See* 815 ILCS 305/15(c); *see also* 815 ILCS 305/30(a) (a violation of §15 is a violation of the ATDA); and

      b. To play a prerecorded message. *See* 815 ILCS 305/30.

57. DegreeMatch made phone calls to the Plaintiff's cellular phone without her prior express consent.

58. DegreeMatch made the calls using equipment that is capable of storing telephone numbers and which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message.

59. DegreeMatch made the calls to solicit goods and/or services. Specifically, DegreeMatch made the calls to Plaintiff to induce her to purchase their services to purportedly assist Plaintiff to obtain a nursing degree.

60. DegreeMatch violated the ATDA when it used an autodialer to dial numbers determined by successively increasing or decreasing integers pursuant to 815 ILCS 305/15(c).

61. DegreeMatch violated the ATDA by playing a prerecorded message placed by an autodialer without the Plaintiff's consent pursuant to 815 ILCS 305/30.

62. By making or causing to be made telephone calls utilizing an autodialer, DegreeMatch violated the ATDA. As a result of DegreeMatch's conduct, Plaintiff suffered actual damages in the form of invasion of privacy, the aggravation that accompanies unsolicited telephone calls, emotional distress, increased usage of her cellular phone services, reduced phone battery life, and has further diminished space for data storage on her cellular phone. Under 815 ILCS 305/30, Plaintiff should obtain treble actual damages, statutory damages in the amount of $500 per violation, and attorney's fees and costs.

    WHEREFORE, Plaintiff KATHY HARRIS, requests that this Honorable Court:

  a. Enter judgment in Plaintiff's favor and against DegreeMatch ;

b. Award Plaintiff her actual damages in an amount to be determined at trial;

c. Award Plaintiff punitive damages in an amount to be determined at trial;

d. Award Plaintiff her reasonable attorney's fees and costs pursuant to 815 ILCS 305/30(c); and

e. Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: March 31, 2016                                           Respectfully Submitted,

/s/ Majdi Y. Hijazin_____

Majdi Y. Hijazin, *Of Counsel*
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630) 575-8181
Fax (630) 575-8188
mhijazin@hijazinlaw.com